```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
BRIGHT KIDS NYC INC.,                                                  :
                                                                       :
                                  Plaintiff,                           :     19-CV-1175 (JMF)
                                                                       :
                     -v-                                               :     OPINION AND ORDER
                                                                       :
TAYLOR KELLY, et al.,                                                  :
                                                                       :
                                  Defendants.                          :
                                                                       :
-----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Bright Kids NYC, Inc. ("Bright Kids"), a tutoring service based in New York City, brings suit against two of its former employees, Taylor Kelly and Sara Javed; an education consultant, Alina Adams; and a competing tutoring service founded by Kelly and Javed called LectureLab, Inc. Bright Kids asserts a slew of federal and state claims based on the individual Defendants' alleged misappropriation of Bright Kids's trademarks and proprietary materials. In response, Kelly and LectureLab bring counterclaims or third-party claims against Bright Kids and its Chief Executive Officer, Bige Doruk. Now pending are two motions to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure: one by Adams with respect to all of Bright Kids's claims against her, *see* ECF No. 57, and one by Bright Kids and Doruk with respect to most of the counterclaims, *see* ECF No. 75. In addition, Bright Kids and Doruk move to strike allegations from the Amended Counterclaims. *See id.* For the reasons that follow, Adams's motion to dismiss is granted in part and denied in part; the motion of Bright Kids and Doruk to dismiss is granted; and the motion of Bright Kids and Doruk to strike is denied.

## ADAMS'S MOTION TO DISMISS

The Court begins with Adams's motion to dismiss all of Bright Kids's claims, which is based on Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**A. Background**

The following relevant facts, drawn from the Amended Complaint, *see* ECF No. 52 ("Am. Compl."), are taken as true for purposes of this motion, *see, e.g.*, *Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013). Bright Kids is "a premier tutoring and publications company based in New York City that focuses on language, arts, and math enrichment for children." Am. Compl. ¶¶ 16. It provides a variety of academic assessment and tutoring services for grade school and pre-grade school children, including online and in-person tutoring, test preparation, and after-school programming. *Id.* ¶ 17, 30. In connection with these services, the company has created, and obtained copyrights for, preparation guides, assessments, workbooks, practice tests, and computer applications, all of which it sells on its own e-commerce website. *Id.* ¶¶ 17-18. It also maintains "confidential and proprietary data about its former and current clients, investors, contactors [sic], vendors, and contacts," which the Amended Complaint defines as the "Proprietary Contact Info." *Id.* ¶ 31. Bright Kids secures this data, as well as its proprietary learning materials and business materials in both hard-copy and electronic-copy formats at its New York City office. *Id.* ¶ 36.

Kelly and Javed are both former employees of Bright Kids. *Id.* ¶¶ 8-9. On July 27, 2016, while still employed there, they signed employment agreements that contained a technology policy and "Proprietary Information and Inventions Agreement." *Id.* ¶¶ 20-22. In signing these documents, Kelly and Javed acknowledged, among other things, that (1) they were subject to a one-year non-compete provision and (2) Bright Kids's client list, proprietary learning materials, and proprietary business materials were "[t]rade [s]ecrets." *Id.* ¶¶ 23-27. Despite signing these agreements, and unbeknownst to Bright Kids, Javed and Kelly started developing their own tutoring service called LectureLab in 2017. *Id.* ¶¶ 52-54. LectureLab's primary offering is an

application-based platform for facilitating the tutoring process for individual tutors.  *Id*. ¶ 55.  On or before January 5, 2017, Javed and Kelly contacted an India-based programmer over the Internet to coordinate the development of the application.  *Id*.  In their dealings with the programmer, Javed and Kelly "fraudulently claimed to be representing" Bright Kids.  *Id.* ¶ 56.  Additionally, they used Bright Kids's name and proprietary materials without its authorization to garner business.  For example, from about November 2017 to July 2018, Javed and Kelly solicited Matilda Academy, a China-based firm, as a potential buyer of Bright Kids's proprietary materials, all the while forging Doruk's signature on documents and representing that they were authorized to enter the various transactions.  *Id*. ¶ 58-61.  In July 2018, LectureLab entered a contract with Matilda Academy to provide the latter with access to its application that, by then, provided unauthorized access to Bright Kids's proprietary learning materials.  *Id*. ¶ 61.

Meanwhile, back in the United States, Javed and Kelly "coordinated with" Adams, an education consultant based in New York, to plan, organize, and advertise more than a dozen LectureLab workshops in 2018 for parents in locations throughout New York City (the "LectureLab Workshops").  *Id*. ¶¶ 63, 68.  Each LectureLab Workshop was hosted by Adams and typically drew about thirty to fifty parents seeking information about the New York City school system, at $35 per ticket.  *Id*. ¶ 64.  To draw potential clients, Adams, Kelly, and Javed "fraudulently advertised each of the LectureLab Workshops as being sponsored by" Bright Kids and "[i]n so advertising the LectureLab Workshops, . . . misappropriated" Bright Kids's trademarks, three of which are registered.  *Id.* ¶ 65; *see id*. ¶¶ 152-54.  "Upon information and belief," Adams "was aware that the LectureLab Workshops were not actually sponsored by" Bright Kids "and actively worked to conceal the fraudulent use of" Bright Kids's name from the company.  *Id.* ¶ 66.  "Such efforts included, but were not limited to, billing" Kelly "directly for

her fees, and accepting personal checks from" Kelly "in relation to the LectureLab Workshops so as to avid [sic]" alerting Bright Kids to "the fraud." *Id.* ¶ 67. Additionally, Kelly, Javed, and Adams "conspired to divert the entire profits from the LectureLab Workshops" from Bright Kids despite the latter's "entitlement to" the profits. *Id.* ¶ 70.

Finally, to the extent relevant here, the Amended Complaint alleges that, in or about July 2018, Kelly "conspired with" Adams to steal Bright Kids's Propriety Contact Info for Adams's "own business use." *Id.* ¶ 74.[1] As support for that claim, the Amended Complaint alleges that, on or about July 18, 2018, Kelly emailed Adams "with an attached document containing certain . . . Proprietary Contact Info," titled "2018FallGTPriorityRegistration_Data_1531953800.csv," as "a show of appreciation." *Id.* ¶ 79(d) (internal quotation marks omitted); *see id.* ¶ 75. "Upon information and belief," Adams "knew that the Proprietary Contact Info was stolen but retained Proprietary Contact Info and utilized it for her own business purposes." *Id.* ¶ 76; *see also id.* ¶ 116(a)-(c).

Based on these events, Bright Kids brings various federal and state claims against Adams. (She brings additional claims against the other Defendants, which are not addressed here.) In particular, Bright Kids brings claims for (1) violations of Section 1962(c) and (d) of the Racketeering and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 *et seq.*, *see* Am. Compl. ¶¶ 85-138; (2) trademark infringement, in violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, *see* Am. Compl. ¶¶ 151-58; (2) misappropriation of trade secrets, *see id.* ¶¶ 159-61;

---

[1] The Amended Complaint actually alleges that Adams conspired with *herself*, *see id.* ("Defendant ADAMS conspired with Defendant ADAMS"); *see also id.* ¶ 75 ("Defendant ADAMS transmitted . . . Proprietary Contact Info to Defendant ADAMS"), but that is nonsensical and it is plain from later allegations that Bright Kids means to allege that *Kelly* conspired with Adams, *see id.* ¶ 79(d).

4

(3) conversion, *see id*. ¶¶ 172-76; (4) unfair competition, *see id*. ¶¶ 199-201; and (5) unjust enrichment, *see id*. ¶¶ 202-06.  Bright Kids also brings standalone claims against Adams for a declaratory judgment, *see id*. ¶¶ 207-14; and for an injunction, *see id*. ¶¶ 231-38.

## B.  Legal Standards

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See, e.g.*, *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 442 (S.D.N.Y. 2019).  The Supreme Court has made clear, however, that a court should not accept non-factual matter or "conclusory statements" set forth in a complaint as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).  Ultimately, the Court must "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id*., and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. at 570.

## C.  Discussion

At the outset, Adams's motion to dismiss Bright Kids's trademark infringement claim

5

under the Lanham Act is easily rejected.[2]  Adams makes only one argument for dismissal of the claim: that "[t]here is no recognized cause of action for aiding and abetting trademark infringement" and that Bright Kids fails to allege a plausible claim of contributory infringement against Adams because there is no allegation that she "induced Kelly or Javed to infringe" Bright Kids's trademark.  ECF No. 58 ("Adams's Mem."), at 17-18.  That argument may be valid, but it is also beside the point because — contrary to Adams's assertion, *see id.* at 17 — the Amended Complaint does, in fact, allege that Adams used, and thus infringed, Bright Kids's trademarks *herself*.  *See* Am. Compl. ¶ 65 ("Ex-Employee Defendants and ADAMS fraudulently advertised each of the LectureLab Workshops as being sponsored by BRIGHT KIDS.  In so advertising the LectureLab Workshops, Ex-Employee Defendants and ADAMS misappropriated BRIGHT KIDS' Trademarks.").[3]  To be sure, if Adams was merely a consultant whose job was to lecture at the LectureLab Workshops — as she asserts, *see* Adams's Mem. 9 — that allegation may ultimately prove to be wrong.  But the Court is required to treat it as true at this stage of the litigation.  *See Empire Merchants*, 902 F.3d at 139.  It follows that Adams's motion to dismiss the Lanham Act claim must be and is denied.[4]

---

[2]    The precise nature of Bright Kids's Lanham Act claim — whether it is for trademark infringement or false endorsement or advertising — is somewhat unclear from the Amended Complaint, but it is unnecessary to pin down for purposes this motion.

[3]    The Amended Complaint does not identify with specificity when or how Adams used Bright Kids's trademarks.  But Adams does not argue that Rule 9(b) of the Federal Rules of Civil Procedure applies and, thus, has forfeited any such argument.  *See also, e.g.*, *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 637 n.1 (S.D.N.Y. 2018) ("In the Second Circuit, it is unsettled whether the heightened pleading standard of Rule 9(b) applies to Lanham Act claims.").

[4]    In its memorandum of law, Bright Kids contends that it does state a plausible claim of contributory trademark infringement.  *See* ECF No. 61 ("Bright Kids's Mem."), at 10-11.  Given the nature of the alleged relationship between Adams and the other Defendants, the Court is skeptical, *see, e.g.*, *Row, Inc. v. Highgate Hotels, L.P.*, No. 15-CV-4419 (JFK), 2018 WL

By contrast, the rest of Bright Kids's claims against Adams must be dismissed. Every one of these claims — for misappropriation of trade secrets, conversion, unjust enrichment, unfair competition, for violations of the RICO Act, for a declaratory judgment, and for an injunction — depends, in one form or another, on the allegation that, on July 18, 2018, Kelly emailed Bright Kids's trade secrets to Adams and that she knew that the information had been stolen from the company. *See* Am. Compl. ¶¶ 116(a)-(c), 130(h), 160, 173-74, 200, 205, 214, 233-38.[5] But that allegation does not ultimately withstand scrutiny, for two reasons.

First, Bright Kids does not plausibly allege that the information was a "trade secret." To establish that information is a trade secret, a plaintiff must "describe the secret with sufficient specificity that its protectability can be assessed. . . . Defendants are entitled to be able to discern what trade secrets are at issue." *Dardashtian v. Gitman*, No. 17-CV-4327 (LLS), 2017 WL 6398718, at *5 (S.D.N.Y. Nov. 28, 2017) (internal quotation marks omitted). With respect to the claims against Adams, however, Bright Kids fails to meet this standard. The Amended Complaint does allege that (1) Bright Kids "maintains confidential and proprietary data about its former and current clients, investors, contactors [sic], vendors, and contacts," which it defines as

---

3756456, at *6 (S.D.N.Y. July 19, 2018), but it need not address the issue given that Bright Kids alleges a claim of direct infringement and Adams's sole argument for dismissal of that claim misses the mark.

[5]   The Amended Complaint alleges that Kelly and Javed "committed" certain "unauthorized uses" of Bright Kids's "corporate resources," one of which pertains to Adams: "On or about March 19, 2018," Kelly gave Adams "the access code to, and use of office space at," Bright Kids's main office "for the purpose of planning LectureLab Workshops." Am. Compl. ¶ 81(c). The Amended Complaint, however, does not cite this as an instance of wrongdoing on the part of Adams herself. *See id.* ¶ 81 ("*The Ex-Employee Defendants* committed, or aided and abetted the commission of the following unauthorized uses of BRIGHT KIDS' employees and corporate resources: . . . ." (emphasis added)). Nor is there any allegation, let alone plausible allegation, that she knew or should have known that her use of the office to work was "unauthorized" or improper in any way. Thus, the non-trademark-infringement claims against Adams rise or fall on the July 18, 2018 email and Adams's knowledge regarding its contents.

7

"Proprietary Contact Info" and, together with other materials, as "Trade Secrets," *id.* ¶¶ 31-32; and (2) the company "goes to great lengths and has invested time and money to develop and maintain its Trade Secrets and to protect its secrecy," *id.* ¶ 37; *see id.* ¶¶ 36, 38-42.  But the Amended Complaint does not specify the *particular* information that Kelly shared with Adams, except to state in conclusory fashion that it was "*certain* BRIGHT KIDS Proprietary Contact Info" — that is, an undefined subset of the Proprietary Contact Info — "entitled '2018FallGTPriorityRegistration_Data_1531953800.csv.'"  *Id.* ¶ 79(d) (emphasis added); *see also id.* ¶ 130(h).  Without knowing what the subset was, let alone anything about it, the protectability of the information cannot "be assessed."  *Dardashtian*, 2017 WL 6398718, at *5 (internal quotation marks omitted).  And making matters worse, the fact that the title of the file contained the word "Registration" strongly suggests that it was list of registrants for the LectureLab Workshops, in which case the data may not have been secret at all.  *See, e.g.*, *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999) ("A customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret . . . *provided the information it contains is not otherwise readily ascertainable*." (emphasis added) (internal quotation marks omitted)).

Second, the Amended Complaint does not plausibly allege that Adams knew or should have known that the information she received belonged to Bright Kids, let alone that it was stolen.  To be sure, Bright Kids does allege that Adams "conspired" with Kelly "to steal BRIGHT KIDS' Proprietary Contact Info."  Am. Compl. ¶ 74; *accord id.* ¶ 116(a)-(c).  But that is the kind of conclusory statement that the Court need not accept as true.  *See Iqbal*, 556 U.S. at 686; *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).  The Amended Complaint also alleges, "[u]pon information and belief," that Adams "knew that the

Proprietary Contact Info was stolen." Am. Compl. ¶ 76.  But to pass muster, an allegation "upon information and belief . . . must be accompanied by a statement of the facts upon which the belief is founded, and cannot rest on pure conjecture and speculation." *Boehm v. SportsMem, LLC*, No. 18-CV-556 (JMF), 2019 WL 3239242, at *2 n.1 (S.D.N.Y. July 18, 2019) (internal quotation marks omitted).  Here, the allegation of Adams's knowledge falls far short.  At most, the Amended Complaint alleges that Adams billed Kelly for her services "directly," Am. Compl. ¶ 67; that she accepted personal checks from Kelly "in relation to the LectureLab Workshops," *id.*; and that Kelly shared the information at issue with Adams "as a show of 'appreciation,'" *id.* ¶ 79(d).  Even taken together, however, these allegations do not come close to supporting the assertion that Adams knew the information belonged to Bright Kids, let alone that Kelly did not have the right to share it.  *Cf. Insituform Techs., Inc. v. Reynolds, Inc.*, No. 4:05-CV-1116 (CDP), 2007 WL 1198889, at *2 (E.D. Mo. Apr. 19, 2007) (denying summary judgment where the defendant had received proprietary information from a former employee on the ground that the defendant's bad intent could be inferred from its knowledge of the employee's non-compete agreement with his former employer and its view that its own similar information was confidential).  What is left is pure conjecture and speculation.

Many of Bright Kids's claims against Adams appear to suffer from other flaws, but the foregoing is enough to doom all of them other than the Lanham Act claim.  In the absence of any plausible allegation that the information provided to Adams was Bright Kids's trade secret, let alone that she knew that it belonged to Bright Kids and knew that Kelly was not entitled to share it, there is no basis to allege misappropriation, unfair competition, unjust enrichment, or conversion.  Nor is there is any basis to allege a violation of the RICO Act, as the only plausible claim remaining is a garden variety trademark claim.  *See, e.g.*, *Patrizzi v. Bourne in Time, Inc.*,

No. 11-CV-2386 (PAE), 2012 WL 4833344, at *4 (S.D.N.Y. Oct. 11, 2012). And finally, there is no basis to bring standalone claims for a declaratory judgment or an injunction based on Adams's receipt and use of the information at issue. Accordingly, all of Bright Kids's claims against Adams must be and are dismissed, with the exception of the Lanham Act claim.

## MOTION TO DISMISS AND STRIKE THE AMENDED COUNTERCLAIMS

That leaves the motion of Bright Kids and Doruk to dismiss and strike portions of the amended counterclaims filed by Kelly and LectureLab.[6] Bright Kids and Doruk first move to dismiss counterclaims three through eight for lack of subject-matter jurisdiction. *See* ECF No. 75-1 ("Bright Kids's Br."), at 5-7. The sole asserted basis for subject-matter jurisdiction over these counterclaims is 28 U.S.C. § 1367, which provides for supplemental jurisdiction over "all other claims that are so related to claims in the action . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The scope of supplemental jurisdiction both before and after the enactment of Section 1367 has traditionally been defined as claims that share a "common nucleus of operative fact" with the underlying claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004). At bottom, the supplemental jurisdiction inquiry rests on "whether 'the facts underlying the federal and state claims substantially overlap[] or the federal claim necessarily [brings] the facts underlying the state claim before the court.'" *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)). By its terms, the statute calls for a separate analysis with respect to

---

[6] Strictly speaking, although the parties refer to them all as "counterclaims," the claims against Doruk are counterclaims as to Bright Kids, but third-party claims as to Doruk because Doruk is not a Plaintiff. For convenience, however, the Court will follow the parties and refer to all of the claims filed by Kelly and LectureLab as "counterclaims."

10

each individual "claim." *See, e.g.*, *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 393-94 (E.D.N.Y. 2007) (finding supplemental jurisdiction proper over some state law claims but not others).

Applying these standards here, the Court easily concludes that counterclaims three through six must be dismissed. They all arise from the alleged failure to pay Kelly wages to which he was due or to provide him with wage statements. *See* ECF No. 71 ("ACC"), ¶¶ 96-147. The only connection between these counterclaims and Bright Kids's claims — and the sole basis for supplemental jurisdiction proffered by Kelly and LectureLab — is that they "are based upon the same employment relationship." ECF No. 82, at 3-5. That, however, is insufficient to support supplemental jurisdiction. *See, e.g.*, *Lawrence v. NYC Med. Practice, P.C.*, No. 18-CV-8649 (GHW), 2019 WL 4194576, at *7 (S.D.N.Y. Sept. 3, 2019); *Turban v. Bar Giacosa Corp.*, No. 19-CV-1138 (JMF), 2019 WL 3495947, at *4 (S.D.N.Y. Aug. 1, 2019); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 468-69 (S.D.N.Y. 2008). Counterclaims seven and eight — tort claims based on communications about the filing of this lawsuit, *see* ACC ¶¶ 148-59 — pose a closer question, if only because Bright Kids's lawsuit is at least relevant to them. At bottom, however, the connection is superficial, and they too lack a "common nucleus of operative fact" with Bright Kids's claims. *Gibbs*, 383 U.S. at 725. In the final analysis, "[t]he essential facts for proving" these six counterclaims and Bright Kids's claims "are not so closely related that resolving both sets of issues in one lawsuit would yield judicial efficiency." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 210 (2d Cir. 2004). Accordingly, counterclaims three through eight must be and are dismissed.

Bright Kids and Doruk also move, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, to strike Paragraphs 23-25 and 51-74 from the Amended Counterclaims. *See* Bright

11

Kids's Br. 24-25. Under Rule 12(f) "court[s] may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "To prevail on a [Rule 12(f)] motion to strike, a party must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; *and* (3) that to permit the allegations to stand would result in prejudice to the movant." *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012) (emphasis added) (internal quotation marks omitted). "Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). As such, "[m]otions to strike are viewed with disfavor and infrequently granted." *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (internal quotation marks omitted).

In light of these standards, the motion to strike here can be swiftly denied. Based on "the sterile field of the pleadings alone," the Court is skeptical of the claim that "no evidence in support of the allegations would be admissible" or "that the allegations have no bearing on the issues in the case." *In re Fannie Mae*, 891 F. Supp. 2d at 471 (internal quotation marks omitted). But the Court need not and does not resolve that question, as Bright Kids and Doruk fail to make any showing whatsoever that permitting the allegations to stand would cause them prejudice. In their opening brief, they merely assert in conclusory fashion that "[a]llowing [the] allegations to remain . . . will unfairly prejudice Plaintiff." Bright Kids's Br. 25. In their reply, they do not even mention the word "prejudice." *See* ECF No. 84. That falls far short of carrying their

12

burden to justify striking the allegations at issue. *See, e.g.*, *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 642 (S.D.N.Y. 2011) ("To have redundant, immaterial or impertinent matters stricken from a pleading, the defendant must demonstrate that . . . to permit the allegations to stand would result in prejudice to the movant." (internal quotation marks omitted)). Accordingly, the motion to strike is denied.

## CONCLUSION

In sum, Adams's motion to dismiss the Amended Complaint is granted as to all claims other than the Lanham Act claims, the motion of Bright Kids and Doruk to dismiss counterclaims three through eight is granted, and the motion to strike is denied.

Further, the Court declines to grant Bright Kids, Doruk, Kelly, or LectureLab leave to amend their dismissed claims. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Ahmed v. GEO USA LLC*, No. 14-CV-7486 (JMF), 2015 WL 1408895, at *5 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks omitted). Here, none of the parties request leave to amend or suggest that they are in possession of facts that would cure the problems with their claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014). Additionally, the Court granted each side leave to amend their pleadings in response to the other side's motion to dismiss and explicitly warned that the side would "not be given any further opportunity to amend the [pleading] to address issues raised by the motion to dismiss." ECF Nos. 46, 66; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)). And finally, many of the problems with the dismissed claims

13

are substantive or jurisdictional, so amendment would be futile. *See, e.g.*, *Maragh v. Roosevelt Island Operating Corp.*, No. 16-CV-7530 (JMF), 2018 WL 6573452, at *6 (S.D.N.Y. Dec. 13, 2018); *Croft v. AXA Equitable Life Ins. Co.*, No. 17-CV-9355 (JMF), 2018 WL 4007646, at *5 (S.D.N.Y. Aug. 22, 2018).

Unless and until the Court orders otherwise, Adams shall file her answer to the Lanham Act claims **within three weeks of the date of this Opinion and Order**. In addition, the initial pretrial conference is reinstated and scheduled for **January 6, 2021**, at **4:00 p.m.** The conference will be governed by the Court's notice of initial conference, *see* ECF No. 2, and the parties should prepare accordingly, including by submitting a joint status letter and proposed case management plan no later than the Thursday prior to the conference.

The Clerk of Court is directed to terminate Dornuk as a party (because the only counterclaims naming Dornuk have been dismissed) and to terminate ECF Nos. 57 & 75.

SO ORDERED.

Dated: November 24, 2020
New York, New York

JESSE M. FURMAN
United States District Judge